U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

DEC 30 2009

TONY R. MOORE, CLERK
BY_____
          DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

---

DENISE BANKSTON AND
KEVIN SCHMIDT

versus

JACK SINGLETON, ET AL.

CIVIL ACTION NO. 09-0594
JUDGE TOM STAGG

---

## MEMORANDUM RULING

Denise Bankston ("Bankston") and her son Kevin Schmidt ("Schmidt") (collectively referred to as "the plaintiffs"), filed a petition on June 27, 2008, and a supplemental petition on January 28, 2009, in the First Judicial District Court in Caddo Parish, Louisiana, alleging several causes of action against Capitol Aggregates, L.L.C. ("Capitol"), Premier Aggregates, L.L.C. ("Premier"), and Jack Singleton ("Singleton") (collectively referred to as "the defendants"). Singleton and Capitol removed the Caddo Parish case to this court.

Before the court are two contested motions. In the first motion, Singleton and Capitol seek to transfer this case to the United States District Court for the Eastern District of Louisiana for eventual referral to the bankruptcy court in that district. See Record Document 2. In the alternative, Singleton and Capitol argue this case should

be referred to the United States Bankruptcy Court for the Western District of Louisiana. See Record Document 38. In the second motion, the plaintiffs request that this case be remanded to the First Judicial District Court in Caddo Parish, Louisiana, or, in the alternative, that this case be referred to the United States Bankruptcy Court for the Western District of Louisiana.  See Record Document 6.   For the reasons which follow, Singleton and Capitol's motion to transfer is **DENIED**.  The plaintiffs' motion to remand and abstain or refer is **GRANTED** to the extent that this court now refers this case to the United States Bankruptcy Court for the Western District of Louisiana.  The plaintiffs' motion is **DENIED** in all other respects.

## I. BACKGROUND

Perceiving a need in New Orleans and the surrounding areas for gravel to service the concrete industry, Singleton, along with several other investors, located and acquired property which contained substantial amounts of gravel and launched a gravel harvesting operation. See Record Document 44, Ex. E. Schmidt approached Singleton and offered to purchase the gravel harvesting operation from the current owners. Schmidt explained that his mother, Bankston, would finance the purchase, and that Schmidt wanted Singleton to serve as a manager and/or operator in his new gravel harvesting company. Singleton advised Schmidt that he would accept a management role in the new company only if he was granted fifty percent ownership

2

in the new company. Schmidt agreed to this requirement and the transaction went forward.

In August of 2007, Bankston and Singleton entered into an "Indemnification Agreement." <u>See</u> Record Document 1, Ex. 1.a at 15. This agreement provided that Premier, a limited liability company initially wholly-owned by Bankston, would acquire the gravel harvesting operation previously mentioned, and that Singleton or his designee would then become a fifty percent owner of Premier. Bankston agreed to personally guarantee debts and obligations that Premier would incur in the process of purchasing the gravel harvesting operations, and Singleton agreed to indemnify Bankston for fifty percent of any liabilities Bankston incurred as a result of these guarantees. <u>See</u> Record Document 1, Ex. 1.a.

Thereafter, in accordance with this indemnification agreement, Bankston, through Premier, acquired the aforementioned gravel harvesting operation. Bankston then, at the direction and instruction of Singleton, transferred a fifty percent membership interest in Premier to Capitol.[1] Bankston also transferred a twenty-five percent membership interest in Premier to her son, Schmidt. Thus, membership of Premier was divided between Bankston (25%), Schmidt (25%), and Capitol (50%).

---

[1]According to documents submitted by the plaintiffs, Singleton's wife is the listed member of Capitol, and Singleton is the manager of Capitol. <u>See</u> Record Document 1, Ex. 1.a.

See id. Bankston, Schmidt, and Singleton were all designated managers of Premier. See id. The operating agreement for Premier generally provided that "no single Manager may act alone but must seek and have the consent of the remaining duly elected Managers." Record Document 1, Ex. 1.b.

As previously noted, on June 27, 2008, Bankston and Schmidt filed a "Petition For Indemnification, Dissolution, And Damages" in the First Judicial District Court in Caddo Parish, Louisiana. See Record Document 11. The plaintiffs then filed a "Supplemental Petition" in that same court on January 28, 2009. See Record Document 1, Ex. 2.a. As described in the original petition and the supplemental petition, Bankston and Schmidt allege four distinct groups of claims. First, Bankston seeks indemnification from Singleton pursuant to the written indemnification agreement previously mentioned (the "indemnification" claim). Second, Bankston and Schmidt seek damages from Singleton and Capitol,[2] alleging that these defendants breached their fiduciary duty to Premier and its minority members through gross mismanagement and several ultra vires actions[3] and are liable for the resulting

---

[2]The plaintiffs argue that Capitol is liable for all of the actions of Singleton. See Record Document 1, Ex. 1.a.

[3]The plaintiffs claim that Capitol and Singleton acted without proper authority in executing leases on real property and obtaining unnecessary and unused equipment in Premier's name or using Premier's resources. The plaintiffs also argue that Singleton acted without proper authorization when he hired several family members to staff Premier and paid these family members generous salaries. In his "Reasons For Judgment," Judge Crichton commented on this last infraction, stating: "Just to

damages (the "damages" claim). Third, Bankston and Schmidt seek the dissolution of Premier (the "dissolution" claim), claiming that it is no longer reasonably practicable for Premier to continue operating in conformity with its articles of organization or the operating agreement.[4] Fourth, Bankston claims that she is entitled to recover over ten million dollars from Premier and, via subrogation, that she holds a security interest in all inventory, accounts, equipment, general intangibles and minerals, and gravel belonging to Premier.[5]

---

put these salaries in perspective, some of Singleton's unilateral family member hirees were paid at an annualized salary higher than district or appellate judges or justices of the Supreme Court!" Record Document 20 at n. 3.The plaintiffs argue that Premier experienced a cumulative net loss of several million dollars as a result of the actions of Capitol and Singleton. See Record Document 1, Ex. 1.a.

[4]According to Bankston and Schmidt's petition, Premier's operating agreement states that all managers must approve of the manner in which Premier's general day-to-day business operations are executed. The plaintiffs implicitly argue that basic operations cannot proceed in this manner. The plaintiffs each own a twenty-five percent ownership interest in the company, and Capitol, managed by Singleton, owns fifty percent of the company. Premier's three managers are Bankston, Schmidt, and Singleton. The acrimony which now exists among these parties and the equivalent ownership interest supporting Bankston and Schmidt versus Singleton and Capitol will inevitably lead to continual deadlock. See generally Record Document 1, Ex. 1.a. The plaintiffs further contend that Premier must be dissolved because Singleton has continuously flaunted the unanimous managerial consent requirement established by Premier's operating agreement, repeatedly taking action on behalf of Premier without seeking the consent of the other managers, namely Bankston and Schmidt. See id. The plaintiffs allege that because of the actions of Capitol and Singleton, Premier is burdened with a lethal level of debt.

[5]According to Bankston and Schmidt's supplemental petition, these claims spring from Bankston's agreement to personally guarantee the payment of several loans which Community Trust Bank made to Premier. Premier failed to pay the balance owed on several of these loans. Thus, Bankston was required to pay in Premier's stead. Bankston notes that the Louisiana Civil Code provides that a surety who pays the creditor is entitled to reimbursement from the principal obligor. She also notes that the Louisiana Civil Code provides that when one person performs the obligation of another, the individual who performs may avail themself of any action and security the obligee

In a document filed on May 11, 2009, the plaintiffs averred that three of the four groups of claims listed above "remain to be determined in [the state] lawsuit." Record Document 33 at 7.[6] However, the state court has acted upon the plaintiffs' request that Premier be dissolved. Judge Scott J. Crichton conducted a trial on the motion to dissolve Premier and thereafter signed a judgment on December 4, 2008, dissolving Premier and appointing co-liquidators.[7]   See Record Document 20. Singleton and Capitol assert that this state court decision is not final because they timely filed a motion and order for appeal from this decision before removing this case to federal court. See Record Document 38 at 5.

Two relevant bankruptcy proceedings were initiated after the state court judgment noted above. On February 27, 2009, several of Premier's creditors filed an

---

may have asserted against the obligor. Thus, according to Bankston, when she paid the balance due on the aforementioned loans in Premier's stead, she, via subrogation, gained the rights, security interest, privileges, mortgages, and encumbrances existing in favor of Community Trust Bank against Premier. See Record Document 1, Ex. 2.a.

[6]See infra note 27.

[7]In his "Reasons For Judgment," Judge Crichton stated:

> Having served on the District Court bench for 18 years (less 27 days) and presided over numerous business disputes, some requiring dissolution of the business entity in liquidation, this judge finds the evidence in this case to be especially disturbing and egregious; certainly, involuntary dissolution, although considered a drastic remedy to be reluctantly applied is the only appropriate and reasonable outcome in this case.

Record Document 20, "Reasons for Judgment," at 4 n.5.

6

involuntary bankruptcy petition against Premier in the United States Bankruptcy Court for the Eastern District of Louisiana.[8]  See Record Document 22.  About one week later, Bankston filed a personal, voluntary bankruptcy petition in the United States Bankruptcy Court for the Western District of Louisiana.   See Record Document 32, Ex. A.

Finally, on April 8, 2009, Singleton and Capitol timely removed the Caddo Parish state court action to this court and filed a motion to transfer the entire case to the United States District Court for the Eastern District of Louisiana. See Record Documents 1 and 2. Bankston and Schmidt opposed the motion to transfer and filed a motion to remand.  See Record Documents 6 and 7.  Both parties also set forth an alternative argument that this case should be referred to the United States Bankruptcy Court for the Western District of Louisiana. The issues presented, now fully briefed by the parties, are ripe for resolution.

## II.  LAW AND ANALYSIS

In the documents submitted to this court, the parties have adopted contrasting positions regarding (A) this court's subject matter jurisdiction over the removed claims, (B) whether the rule of mandatory abstention applies and requires this court

---

[8]On May 19, 2009, Premier was declared a debtor pursuant to 11 U.S.C. § 303(h)(2) by Judge Elizabeth Magner, Bankruptcy Judge for the Eastern District of Louisiana.  See Record Document 38, Ex. J.

to remand the removed case, and (C) whether and/or how this court should apply its

discretionary authority to abstain from further consideration of this case. The court

will address each of these issues in turn.

## A.    Subject Matter Jurisdiction.

As a threshold question, this court must determine whether it has subject matter

jurisdiction over the claims raised in the case at bar. Singleton and Capitol removed

the underlying state case pursuant to 28 U.S.C. § 1452,[9] and they have asserted that

---

[9]"The Fifth Circuit has interpreted the general removal statute, 28 U.S.C. § 1446, to require that all properly served defendants join in a notice of removal." Marshall v. Air Liquide–Big Three, Inc., No. 06-9619, 2007 WL 275898, at *2 (E.D. La. Jan. 24, 2007) (citation omitted). However, this action was removed under 28 U.S.C. § 1452. "[T]he courts are in disagreement as to whether [the] rule of unanimity applies to removals under section 1452, and the Fifth Circuit has not directly addressed this issue." Id.

In their "Reply To Memorandum In Opposition To Motion To Remand And Abstain," Record Document 41, the plaintiffs cite Orion Refining Corp. v. Fluor Enters., Inc., 319 B.R. 480 (E.D. La. 2004), and argue that the United States District Court for the Eastern District of Louisiana has sided with those courts which find that the rule of unanimity applies to removals under section 1452. The plaintiffs then assert that Premier did not consent to the removal of this proceeding. See Record Document 41. Accordingly, the plaintiffs argue that the removal of the case at bar might therefore be considered procedurally defective in the Eastern District of Louisiana. The plaintiffs simply incorporate this information into their general argument that this court should refrain from referring this case to the United States District Court for the Eastern District of Louisiana. See id.

The court notes, however, that the plaintiffs do not specifically assert that this court should adopt the reasoning of the United States District Court for the Eastern District of Louisiana regarding the rule of unanimity. Furthermore, they have failed to cite any precedent on the issue of unanimous consent which would bind this court. While they have asserted several arguments in favor of remand, such as lack of subject matter jurisdiction and the applicability of the rule of mandatory abstention, the plaintiffs have not filed a document in this court in which they specifically argue that this court should find the removal of this case to this court procedurally defective under the terms of 28 U.S.C. § 1452. Accordingly, the court has not considered any potential arguments in this regard. The court also notes that nine days after the plaintiffs submitted their argument regarding the rule of unanimity, the duly appointed bankruptcy trustee for Premier filed a document in which he consented to the removal of this case on behalf of Premier. See Record Document 43.

this court has subject matter jurisdiction over the present matter under 28 U.S.C. §§ 1334 and 1367 based on the relationship between the claims originally filed in state court and Premier and Bankston's bankruptcy proceedings.[10] See Record Document 38 at 1.

Under 28 U.S.C. § 1334,[11] the district courts have original but not exclusive

---

[10]In their "Notice Of Removal," Capitol and Singleton argue only that the claims asserted in the Caddo Parish case are intimately related to the Premier bankruptcy proceedings. See Record Document 1. However, in their "Memorandum In Opposition To Motion To Remand And Abstain," these defendants argue, in the alternative, that the Caddo Parish claims are, at the very least, related to Bankston's bankruptcy proceedings. See Record Document 38.

[11]As the Fifth Circuit has explained:

Section 1334 lists four types of matters over which the district court has jurisdiction:

    1. "cases under title 11",
    2. "proceedings arising under title 11",
    3. proceedings "arising in" a case under title 11, and
    4. proceedings "related to" a case under title 11.

The first category refers merely to the bankruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction. Our concern, however, is with the other proceedings listed in subsection 1334(b), over which the district courts have original, but not exclusive, jurisdiction.

. . . .

Legislative history indicates that the phrase "arising under title 11, or arising in or related to cases under title 11" was meant, not to distinguish between different matters, but to identify collectively a broad range of matters subject to the bankruptcy jurisdiction of federal courts. . . .

. . . .

For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under", "arising in a case under", or "related to a case under", title 11. These

9

jurisdiction over all civil proceedings[12] "related to" cases under title 11, i.e., bankruptcy cases. See Arnold v. Garlock, Inc., 278 F.3d 426, 434 (5th Cir. 2001); Wood v. Wood (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987). The phrase "related to" is a term of art. See Randal & Blake, Inc. v. Evans (In re Canion), 196 F.3d 579, 585 (5th Cir. 1999). According to the United States Court of Appeals for the Fifth Circuit, a proceeding is "related to" a bankruptcy proceeding if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." Arnold, 278 F.3d at 434 (quoting In re Canion, 196 F.3d at 585) (emphasis added).[13] "Certainty is unnecessary; an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt

---

references operate conjunctively to define the scope of jurisdiction. *Therefore, it is necessary only to determine whether a matter is at least "related to" the bankruptcy. . . .*

Wood v. Wood (In re Wood), 825 F.2d 90, 92-93 (5th Cir. 1987) (emphasis added).

[12]Section 1334 "uses the term *proceeding* in its broadest sense . [A]nything that occurs within a case is a *proceeding*." U.S. Brass Corp. v. Travelers Ins. Group, Inc. (In re U.S. Brass Corp.), 301 F.3d 296, 304 n.14 (5th Cir. 2002) (citations and quotations omitted) (emphasis added).

[13]The Fifth Circuit has also specifically noted that "related to" cases include "(1) causes of action owned by the debtor which become part of the estate pursuant to 11 U.S.C. § 541,[] and (2) suits between third parties which have an effect on the bankruptcy estate." Arnold, 278 F.3d at 434 (citing Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.5, 115 S.Ct. 1493, 1499 (1995)).

estate." <u>Edge Petroleum Operating Co., Inc. v. GPR Holdings, L.L.C. (In re TXNB Internal Case)</u>, 483 F.3d 292, 298 (5th Cir. 2007).

As to 28 U.S.C. § 1367, the Fifth Circuit has noted that this provision provides the district courts with supplemental jurisdiction over claims forming part of the same case or controversy with a civil action over which the district courts have original subject matter jurisdiction, including matters falling under the district courts' original "related to" bankruptcy jurisdiction. <u>See</u> <u>In re TXNB Internal Case</u>, 483 F.3d at 300.[14] The case or controversy test is often referred to as a search for "a common nucleus of operative fact." <u>Mendoza v. Murphy</u>, 532 F.3d 342, 346 (5th Cir. 2008).

---

[14]The Fifth Circuit has stated that supplemental jurisdiction applies in bankruptcy cases before the district courts:

> Edge's complaint gives rise to two claims: one that is a core proceeding and another that is supplemental to it and eligible for federal jurisdiction under 28 U.S.C. § 1367(a). Bankruptcy courts may not exercise supplemental jurisdiction. <u>See</u> <u>Walker v. Cadle Co. (In re Walker)</u>, 51 F.3d 562, 570 (5th Cir.1995). Section 1334(c)(2), however, addresses abstention by district courts. Section 1367(a) provides for supplemental jurisdiction (subject to irrelevant exceptions) over claims forming part of the same case or controversy with "any civil action over which the district courts have original jurisdiction." This includes bankruptcy jurisdiction. *It follows that district courts have supplemental jurisdiction over claims that form part of the same case or controversy with bankruptcy claims.* <u>See</u> <u>Publicker Indus. v. United States</u>, 980 F.2d 110, 114-15 (2d Cir.1992).

<u>In re TXNB Internal Case</u>, 483 F.3d at 300 (emphasis added).

11

Applying these standards to the case at bar, it is clear that this court has subject matter jurisdiction over each of the claims asserted in the removed state action because each of the claims asserted in the removed state action is related to a bankruptcy proceeding.

### 1.    Bankston And Schmidt's Claims Against Capitol And Singleton.

Bankston's indemnification claim against Singleton and her claims for damages against both Singleton and Capitol are clearly "related to" Bankston's bankruptcy proceeding. A judgment in Bankston's favor on these claims could affect Bankston's bankruptcy estate by increasing her estate. See Beitel v. OCA, Inc. (In re OCA, Inc.), 551 F.3d 359, 367 (5th Cir.2008) (finding a claim "obviously could have an affect" on the bankruptcy estate because a favorable verdict on the claim could "increase" the bankruptcy estate).  Therefore, this court has subject matter jurisdiction over these claims.

Schmidt's claims for damages against Singleton and Capitol are also related to Bankston's bankruptcy proceeding.  As this court has previously explained, an action is related to a bankruptcy case if it is *conceivable*, not necessarily certain, that it could either positively or negatively impact a bankruptcy estate. It is conceivable that the

adjudication of Schmidt's claims for damages against Singleton and Capitol could impact Bankston's bankruptcy estate. Schmidt's claims for damages against Singleton and Capitol are identical to and were asserted jointly with Bankston's claims for damages against Singleton and Capitol. Any attempt to sever Bankston's claims for damages against Capitol and Singleton from Schmidt's identical claims would be ineffective. A review of the record confirms that if Schmidt attempted to prosecute these claims independently from Bankston, Singleton and Capitol would make a cross-claim demand against Schmidt *and* Bankston. See La. Code Civ. P. arts. 1073 and 1111.[15] The record shows that the managers of Premier were Bankston, Schmidt, and Singleton, and the members of Premier were Bankston, Schmidt, and Capitol. Accordingly, these parties owe statutory and contractual duties to each other. See generally La. R.S. 12:1314 (explaining the duties of members and managers of a limited liability company), Record Document 1, Ex. 1.a (Operating Agreement of Premier Aggregates, L.L.C.). The record also shows that while Bankston and Schmidt

---

[15] Louisiana Code of Civil Procedure article 1073 provides, in pertinent part, that "[p]ersons other than those made parties to the original action may be made parties to a cross-claim." Louisiana Code of Civil Procedure article 1111 provides, in pertinent part:

> The defendant in a principal action by petition may bring in any person, including a codefendant, who is his warrantor, or who is or may be liable to him for all or part of the principal demand.

13

claim that Singleton and Capitol were guilty of ultra vires actions and are liable for

the resulting damages to Premier, Singleton and Capitol, in response, have alleged

that Schmidt *and* Bankston, jointly and separately, are also guilty of ultra vires

actions and are liable for damages. See Record Document 44, Ex. E at 6-8.[16] If

Capitol and Singleton prevail in their cross-claim against Bankston and Schmidt, then

---

[16] Included as an exhibit to one of their filings in this court, the plaintiffs submitted a complaint originally filed in the United States Bankruptcy Court for the Western District of Louisiana on behalf of Singleton and Capitol objecting to the discharge of some of Bankston's debts. In this complaint, Capitol and Singleton set forth several allegations, including the following:

> On at least two separate occasions after the Operating Agreement was executed, Bankston and/or Schmidt executed loan documents and/or agreements and/or promissory notes on behalf of Premier, purporting to borrow large sums of money from various lenders and incurring substantial debt on behalf of Premier, without the knowledge of or without first obtaining the unanimous consent of Premier's three managers [i.e., without Singleton's approval, in violation of the express terms of Premier's operating agreement].

See Record Document 44, Ex. E at 6. Capitol and Singleton further stated that:

> Upon information and belief, Premier never received all of the benefits or use of the proceeds from certain loans and/or promissory notes executed by Bankston and/or Schmidt, individually and as Bankston's agent, even though Premier was an obligor on said loans and/or promissory notes.

> Upon the unauthorized execution of some or all of these loan documents and/or agreements, Bankston and/or Schmidt proceeded to expend, dispose of, misappropriate, and/or otherwise improperly transfer or reallocate some and/or all of Premier's assets, including proceeds of said loans and/or promissory notes, from Premier without Plaintiffs' knowledge or consent and without the unanimous consent of Premier's three managers, as required by Premier's Operating Agreement.

Id. at 7.

Bankston's estate could be held liable for damages.  Therefore, since it is conceivable that the adjudication of Schmidt's claims for damages against Capitol and Singleton could affect Bankston's bankruptcy estate, Schmidt's claims for damages are related to Bankston's bankruptcy proceeding.  Accordingly, this court has subject matter jurisdiction over Schmidt's claims for damages against Capitol and Singleton.

### 2.    Bankston And Schmidt's Claims Against Premier.

"Related to" subject matter jurisdiction exists for Bankston's dissolution claim because that claim could conceivably affect Premier's bankruptcy proceedings.  For this same reason, this court has "related to" subject matter jurisdiction over Schmidt's identical dissolution claim.  Finally, this court has "related to" subject matter jurisdiction over Bankston's claims for damages and security interests against Premier itself. These claims could conceivably have an effect on both Bankston's bankruptcy proceedings and Premier's bankruptcy proceedings.

Having established that this court has "related to" subject matter jurisdiction over each of the several claims asserted in the removed state action, the court will proceed to review the other issues raised by the parties.

## B.    Mandatory Abstention.

Invoking the "rule of mandatory abstention," Bankston and Schmidt contend that even if this court has subject matter jurisdiction it must not hear this proceeding. See Record Document 33 at 11-16. The rule of mandatory abstention is set forth in 28 U.S.C. § 1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

The Fifth Circuit has interpreted this provision to mandate abstention by a federal court when:

> (1) [t]he claim has no independent basis for federal jurisdiction, other than [section] 1334(b)[17]; (2) the claim is a non-core proceeding, i.e., it is related or in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court.

---

[17]See infra note 18.

16

In re TXNB Internal Case, 483 F.3d at 300 (citation and quotations omitted).

Applying this multi-factor test to the plaintiffs' several claims, this court finds that

the rule of mandatory abstention does not apply in this case.

The first prong of the mandatory abstention test requires that a claim have no

independent basis for federal jurisdiction other than section 1334.[18] All of Bankston

and Schmidt's claims satisfy this requirement.

The second prong of the mandatory abstention test requires that the claim be

a non-core claim as opposed to a core claim. Accordingly, the court will first review

---

[18]In its decision in In re TXNB Internal Case, the Fifth Circuit, quoting a previous decision, first stated that mandatory abstention applies when "(1) [t]he claim has no independent basis for federal jurisdiction, *other than [section] 1334(b)* . . . ." 483 F.3d at 300 (emphasis added). However, at a later point in this same opinion, the court clarified the requirements of this first prong, stating that "mandatory abstention applies solely to claims giving rise to federal jurisdiction under no provision other than *§ 1334*," not just 1334(b). Id. at 301 (emphasis added).

Capitol and Singleton rely only on the first statement noted in the previous paragraph to substantiate their argument regarding the first prong of the mandatory abstention test. These defendants argue that the plaintiffs' claims are core claims and that this court therefore has jurisdiction over these claims under section 1334(a), as opposed to section 1334(b). Accordingly they argue that since this court has an independent basis for federal jurisdiction, *other than [section] 1334(b)*, the mandatory abstention doctrine should not apply to the plaintiffs' claims.

Even if Capitol and Singleton are correct in relying on the Fifth Circuit's first description of the first prong of the mandatory abstention test, their arguments on this point would not prevail. Section 1334(a) grants the district courts jurisdiction over cases "under title 11." This phrase "refers merely to the bankruptcy petition itself." In re Wood, 825 F.2d at 92. The plaintiffs' claims in the case at bar are not based on a bankruptcy petition itself. Thus, this court does not have jurisdiction under section 1334(a).

the distinction between core and non-core proceedings, and then the court will apply these standards to the case at hand.

Core proceedings fall into one of two categories.[19] In re Wood, 825 F.2d at 96-97. [20] The first category of core proceedings are proceedings which involve a cause of action *expressly* "created or determined by a statutory provision of title 11." Id. at 96. An example of this type of case is "an action by the trustee to avoid a preference." Id. at 97. The second category of core proceedings encompasses "'administrative' matters that arise *only* in bankruptcy cases." Id. (emphasis in original). These are proceedings which are "*not* based on any right *express*ly created by title 11, but

---

[19]In In re Wood, the Fifth Circuit held that a proceeding is core if it can be properly classified as a proceeding which "arise[s] under" or "arise[s] in" title 11. 825 F.2d at 96-97 (quoting the language utilized by 28 U.S.C. § 157). Thus, in In re Wood, the Fifth Circuit detailed the meaning of these two statutory phrases in order to properly define core proceedings. The discussion above is based on the court's explanation of the proper meaning of these two phrases. The oft-quoted conclusion of the court's relevant discussion in In re Wood succinctly states:

> We hold, therefore, that a proceeding is core . . . if it invokes a
> substantive right provided by title 11 or if it is a proceeding that, by
> its nature, could arise only in the context of a bankruptcy case.

Id. at 97.

[20]In re Wood, 825 F.2d at 96-97, is the seminal case in this federal circuit regarding the core versus non-core distinction. In this opinion, Judge Wisdom distilled the principles for the identification of core proceedings from the pertinent statutes *and* case law. The Fifth Circuit has consistently applied and affirmed the tenets established in In re Wood. See In re OCA, Inc., 551 F.3d at 367-368; In re U.S. Brass Corp., 301 F.3d at 305-306.

nevertheless, would have *no existence* outside of the bankruptcy." See id. (emphasis added). Examples of this second category of core cases include "the filing of a proof of claim or an objection to the discharge of a particular debt." See id.

If a proceeding could conceivably have a positive or negative effect on a bankruptcy estate, but it falls outside of the aforementioned categories of core proceedings, it is, at most, a non-core proceeding.  See id. Examples of non-core proceedings often include claims based on state-created rights. See id. [21]

"In determining the nature of a proceeding for purposes of determining core status, the court must look to both the form and substance of the proceeding." Id. Regarding the inquiry into form, the court should examine whether or not the claim in question was asserted as a "proof of claim," or in some other form which would trigger the peculiar powers of the bankruptcy court. Id. As to substance, the court should examine whether the primary issues raised by the claim concern bankruptcy matters such as dischargeability rather than state law concerns. See id. at 98.

---

[21]The court is aware, however, that "[a] determination that a proceeding is not a core proceeding shall not be made *solely* on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3) (emphasis added); see also In re Wood, 825 F.2d at 96, 97 n.34.

Applying the standards explained above to the instant case, it is clear that Bankston's claims and Schmidt's claims are all non-core claims, and thus these claims satisfy the second factor of the mandatory abstention test.[22] Bankston and Schmidt's claims came into existence and were being examined in state court prior to the bankruptcy proceedings at issue.[23] The claims were not originally asserted in a form which triggered bankruptcy law, and the substance of these claims are issues of state law.[24]

---

[22]Singleton and Capitol contend that the plaintiffs' claims are core to Premier's bankruptcy because they "are asserted by insiders and managers of Premier, Plaintiffs, against other members and managers of Premier, Singleton and Capitol, and against Premier, itself." Record Document 38 at 12. This position does not comport with the standards and analysis set forth above.

[23]It can be said that Bankston and Schmidt's claims were "independent [of] and antecedent to the bankruptcy petition." See Citizens Bank & Trust Co. v. Case (In re Case), 937 F.2d 1014, 1019, 1020 n.4 (5th Cir. 1991) (recognizing that the Fifth Circuit regularly classifies claims as non-core when the claims were "independent of or antecedent to" the relevant bankruptcy proceedings).

[24] As explained above, part of the core versus non-core analysis is an inquiry into the form of the claim. This court has been asked to review Bankston and Schmidt's claims in the form in which they existed when removed to this court, as claims asserted in a state court petition. Although this court has received notice that Bankston has now asserted her claims as objections to proofs of claim filed in her bankruptcy case by Singleton and Capitol and as compulsory counter-claims to an adversary proceeding filed by Singleton and Capitol in the United States Bankruptcy Court for the Western District of Louisiana, this court is not presently considering Bankston and Schmidt's claims in the bankruptcy proofs of claim or counter-claim context. See Record Document 44. In the form of claims asserted in a state court petition, Bankston and Schmidt's claims are non-core. This court has not considered whether these same claims in the form of an objection to a proof of claim or a counter-claim asserted in a bankruptcy proceeding are core or non-core.

The third prong of the mandatory abstention test requires that an action be commenced in state court. All of Bankston and Schmidt's claims can satisfy this requirement. The plaintiffs' claims were originally filed in the First Judicial District Court in Caddo Parish, Louisiana.[25] Furthermore, the plaintiffs have introduced evidence which demonstrates that, prior to removal, the state court in Caddo Parish was actively addressing the issues presented in this case.[26]

The fourth and final prong of the mandatory abstention test requires a finding that the action could be adjudicated timely in state court. "A party asserting that an action can be timely adjudicated in state court . . . must provide the court with more than a 'naked assertion' of such." Helena Chem. Co. v. Mugica (In re Mugica), 362 B.R. 782, 793 (Bankr. S.D. Tex. 2007) (citation omitted). However, the party moving for mandatory abstention does not need to show that the action can be *more timely* adjudicated in state court, but only that the matter can be *timely* adjudicated in state court. See id.

---

[25]"A civil action . . . is *commenced* by the filing of a pleading presenting the demand to a court of competent jurisdiction." See La. Code Civ. P. art. 421 (emphasis added); see also Helena Chem. Co. v. Mugica (In re Mugica), 362 B.R. 782, 793 (Bankr. S.D. Tex. 2007) (finding this third factor was satisfied when the "proceeding was initially filed in state court").

[26]See infra note 27.

21

In support of their arguments regarding this fourth prong, the plaintiffs have introduced evidence demonstrating that extensive proceedings have already occurred before Judge Crichton in state court.[27] Courts have considered such a showing sufficient to satisfy the requirements of this last prong of the mandatory abstention test.  See Veldekens v. GE HFS Holdings, Inc. (In re Doctors Hospital 1997, L.P.), 351 B.R. 813, 846 n.29 (Bankr. S.D. Tex. 2006) ( "In instances where federal courts have found that state courts could adjudicate the dispute in a timely manner, the movant introduced evidence that the suit had already been prosecuted to some extent in the state court, which had issued various orders and become familiar with the case.").

---

[27]The record shows that the state court in Caddo Parish spent several months considering many aspects of the plaintiffs' case. See Record Documents 15 and 19. A trial was held regarding the plaintiffs' request for the judicial dissolution of Premier. See Record Document 20. At this trial, the state court heard testimony from five individuals, considered numerous exhibits, and heard arguments from counsel representing the several parties. See id. Thereafter, the court issued a judgment in favor of the plaintiffs on the dissolution issue and published corresponding findings of fact and conclusions of law. Although the state court has not yet issued a final judgment regarding the plaintiffs' remaining claims, the findings of fact and conclusions of law which were published with the judgment on the dissolution issue bear obvious relevance to Bankston and Schmidt's claims for damages based upon the ultra vires actions of Capitol and Singleton. See Record Document 1, Ex. 1.a. The state court found that Singleton and Capitol violated Premier's operating agreement, and "in numerous instances Singleton engaged in ultra vires and random unauthorized acts to the detriment of Premier . . . ." See Record Document 20 at 4. The state court also found this was a case "of demonstrated bad faith and evil intent by a once trusted business partner which has real and devastating financial consequences for the plaintiffs." Id. at 5.

Singleton and Capitol, however, argue that the claims here at issue cannot be timely adjudicated in state court because of the stays imposed by federal bankruptcy law. In their opposition memo, these defendants state:

> Premier has been declared a debtor in the Eastern District [ ] Bankruptcy Court and Banskton [sic] is an alleged debtor in the Western District Bankruptcy Court. Consequently, even if this lawsuit is remanded, it could not proceed without prior approval from one or, in some instances, both of the courts presiding over Premier's and Bankston's respective bankruptcies.
>     In light of the fact that such approval has neither been requested nor given, nor can it be guaranteed, it is irrefutable that this lawsuit cannot be timely adjudicated in a state forum.

Record Document 38 at 14. Though no statutory authority is cited in support of this argument, it is presumed that Singleton and Capitol are referencing the effects of 11 U.S.C. § 362, the "[a]utomatic stay" provision of the bankruptcy statutes. This stay generally prevents the continuation or the commencement of legal action *against* a debtor in bankruptcy or the property of the debtor.[28] Bankston and Schmidt offer no

---

[28]In In re TXNB Internal Case, the Fifth Circuit found that "[s]ection 362(a) operates to stay *only* actions *against* bankruptcy petitioners *and their* property. . . . The provision does *not* apply . . . to actions *not* directed *against* the debtor *or* property of the debtor." 483 F.3d at 301 (citing Arnold, 278 F.3d at 436) (emphasis added).

direct counter-argument on this point.[29] The plaintiffs have not, for instance, suggested that any exception to the bankruptcy stay provision applies in the instant case. As will be explained in greater detail below, after a review of the record, this court agrees with Capitol and Singleton's argument regarding the fourth and final prong of the mandatory abstention test.

The automatic stay provision of the bankruptcy statutes would prevent the timely adjudication, upon remand, of those claims asserted against the bankrupt debtor Premier or Premier's property since these claims are asserted *against* a debtor in bankruptcy. These claims include Bankston and Schmidt's dissolution claims and Bankston's claims for damages and security interests against Premier.[30]

The automatic stay effected by 11 U.S.C. § 362 would also prevent the timely adjudication of Bankston's several claims against Singleton and Capitol. This court

---

[29] In the section of their filings regarding mandatory abstention, Bankston and Schmidt simply contend that "this action has been commenced, and there can be no showing that it cannot can [sic] be timely adjudicated in the state forum." See Record Document 33 at 16. Furthermore, the plaintiffs do not provide any further direct argument on this point in their reply to Capitol and Singleton's opposition. See Record Document 41.

[30] Bankston and Schmidt agree with this finding. See Record Document 33 at 19. In the documents submitted to this court, the plaintiffs have acknowledged that "[i]f the Bankruptcy Court for the Eastern District does not dismiss the involuntary petition and Premier is adjudicated as a debtor, then this lawsuit, as against Premier, will continue to be subject to the automatic stay of 11 U.S.C. § 362." Id.

recognizes that these claims are not asserted *against* a debtor in bankruptcy or the property of a debtor.[31] However, the applicable statutory and jurisprudential law requires this court to assess whether the entire *action* concerning these claims could be timely adjudicated in state court before determining whether or not the rule of mandatory abstention applies. See 28 U.S.C. § 1334(c)(2) ( stating that the district court shall abstain from hearing such proceeding if an "action" is commenced and can be timely adjudicated in a state forum), In re TXNB Internal Case, 483 F.3d at 300 (stating that the court must find that the "action" could be adjudicated timely in state court).   The record clearly indicates that if Bankston's several claims against Singleton and Capitol are remanded to state court, Singleton and Capitol will assert counterclaims against Bankston's estate. See Record Documents 44 and 45.[32] These counterclaims will be stayed indefinitely as they are claims against Bankston's

---

[31] Although their thoughts on this point are not found under their mandatory abstention analysis, Bankston and Schmidt do express the belief that because their claims against Capitol and Singleton are not directed at debtors in bankruptcy, the automatic stay provisions of the bankruptcy statutes would not hinder the progress of these claims if they were remanded to state court. See Record Document 33 at 19 and 22. However, as discussed above, the governing authorities dictate that this court must find that the entire *action* concerning each claim could be timely adjudicated in state court before the mandatory abstention rule is applied to a particular case. As explained above, this court cannot say with certainty that the action(s) concerning the claims at issue would proceed towards a timely adjudication in state court due to the effects of the automatic stay provision of the bankruptcy statutes.

[32] See supra note 16.

bankrupt estate. Thus, this court cannot say with certainty that the entire *action* regarding Bankston's claims against Capitol and Singleton could be adjudicated in a timely manner if remanded to the state court.

As previously stated, Schmidt's claims for damages against Capitol and Singleton are identical to Bankston's claims for damages against Capitol and Singleton. Any attempt to sever Schmidt's claims for damages against Singleton and Capitol from Bankston's identical claims would be ineffective. The record shows that while Bankston and Schmidt claim that Singleton and Capitol were guilty of ultra vires actions and are liable for the resulting damages to Premier, Singleton and Capitol, in response, have alleged that Bankston and Schmidt, jointly and separately, are also guilty of ultra vires actions and are liable for damages. See Record Document 44, Ex. E at 6-8.[33] Thus, if Schmidt attempted to prosecute his claims for damages against Capitol and Singleton independently from Bankston's identical claims, Singleton and Capitol would make a cross-claim demand against Schmidt *and* Bankston. See La. Code Civ. P. arts. 1073 and 1111.[34] This cross-claim, at least as it

---

[33] See supra note 16.

[34] See supra note 15.

pertains to Bankston, would be stayed indefinitely as it would be a claim against Bankston and her bankrupt estate. Accordingly, this court cannot say with certainty that the entire action regarding Schmidt's claims for damages against Singleton and Capitol could be timely adjudicated in state court if these claims were remanded.

In summary, the actions concerning each of the several claims asserted by Bankston and Singleton would, if remanded, be stayed indefinitely under the automatic stay provision of the bankruptcy statutes. Since this court cannot say with certainty that the actions concerning Bankston and Schmidt's claims could, if remanded, be timely adjudicated in state court, these claims fail the fourth prong of the mandatory abstention test. Accordingly, this court finds that the rule of mandatory abstention, 28 U.S.C. § 1334(c)(2), does not apply to any of the claims presented in the removed case.

## C.    Permissive Abstention.

The plaintiffs argue that this court should exercise its broad discretionary authority under 28 U.S.C. § 1334(c)(1) and voluntarily elect to abstain from hearing any claim which it is not expressly required to abstain from considering under the rule of mandatory abstention. See Record Document 33 at 17. After completing the

27

mandatory abstention analysis in the prior section, the court finds that all of the claims asserted in the removed action are subject to further analysis.

This court declines to abstain from further consideration of Bankston and Schmidt's claims. In accordance with the local rules of this court, these matters will be referred to the United States Bankruptcy Court for the Western District of Louisiana. <u>See</u> Local Civil Rule 83.4.1.[35] This decision will allow Bankston's bankruptcy to be efficiently and effectively managed. This decision also comports with the alternative arguments set forth by Bankston, Schmidt, Singleton and Capitol. <u>See</u> Record Documents 33 at 18-19 and 38 at 15-16.

**D.    Transfer Of Venue.**

Capitol and Singleton have moved this court to transfer this entire case to the Eastern District of Louisiana. <u>See</u> Record Document 2. However, the moving parties do not cite a specific provision which would grant this court authority to transfer these claims to the United States District Court for the Eastern District of Louisiana.

---

[35] Local Civil Rule 83.4.1 states:

Under the authority of 28 USC 157 the district court refers to the bankruptcy judges of this district all cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11. As set forth in 28 USC 157(b)(5), personal injury tort and wrongful death claims shall be tried in the district court.

The court perceives that the general venue statute, 28 U.S.C. § 1404, rather than the bankruptcy venue statute, 28 U.S.C. § 1412, applies to this question.[36] However, this court does not need to decide which of these two provisions apply to this particular matter in order to rule upon the defendant's motion. Under either statute, the moving party bears the burden of proof and must demonstrate by a preponderance of the evidence that venue should be transferred, i.e., that the transfer is for the convenience of the parties or in the interest of justice. See In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5thCir.2008) (considering a transfer under section 1404), In re Scotia Dev., No. 07-20027, 2007 WL 1192137, at *8 (Bankr. S.D. Tex. Apr. 20, 2007) (considering a transfer under section 1412). Singleton and Capitol have presented

---

[36]The bankruptcy venue statute applies when the court considers transferring a case or proceeding "under title 11" to a district court for another district. 28 U.S.C. § 1412. Generally, in the context of the bankruptcy statutes, the phrase "under title 11" "refers merely to the bankruptcy petition itself." See In re Wood, 825 F.2d at 92. In the context of the bankruptcy venue statue, however, some courts have found the phrase "under title 11" refers to the larger category of "core" proceedings. See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., No. 03-4973, 2004 WL 2278770, at *14 (S.D. Tex. Sept. 14, 2004); Bayou Steel Corp. v. Boltex Mfg. Co., L.P., No.03-1045, 2003 WL 21276338, at * 1 (E.D. La. June 2, 2003). Accepting either interpretation of "under title 11," it seems clear that the general venue statute rather than the bankruptcy venue statute would govern the question presently at issue. This court is considering claims which do not arise directly from the bankruptcy petition and which are purely non-core matters "related to" a case or cases under title 11. See 28 U.S.C. § 1334; see also In re Wood, 825 F.2d at 93, 96-97. See generally Ni Fuel Co., Inc. v. Jackson, 257 B.R. 600, 608 (N.D. Okla. 2000); Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C., 408 B.R. 90, 97-99 (Bankr. S.D. Tex. 2009).

little argument in this regard and have failed to meet this burden of proof. <u>See</u> Record Document 2.  Accordingly, their motion to transfer will be denied.

## III. CONCLUSION

For the reasons set forth above, Bankston and Schmidt's motion to remand and abstain or refer (Record Document 6) is **GRANTED** to the extent that this court now refers this case to the United States Bankruptcy Court for the Western District of Louisiana.  The motion is **DENIED** in all other respects. Singleton and Capitol's motion to transfer (Record Document 2) is **DENIED**.  An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 30th day of December, 2009.



JUDGE TOM STAGG

30